CURRIE *v.* BENNETT.

[71 South. 830.]

EXECUTORS AND ADMINISTRATORS. *Management of estate.   Gift.*
　　When deceased left a number of shares in a corporation which was sold by his administrator under an order of court and the sale confirmed and afterwards the corporation made a gift to the wife of deceased on acounts of his long. and faithful service and such gift was entirely disconnected with the sale of the stock, in such case the wife could not be held to account to the administrator for the money so received.

APPEAL from the chancery court of Harrison county. HON. J. M. STEVENS, Judge.

Action by J. F. Bennett, administrator of the estate of B. D. Currie. From a decree for the plaintiff, defendant appeals and plaintiff cross-appeals.

The facts are fully stated in the opinion of the court.

*T. M. Evans* and *L. Brame,* for appellant.

*U. B. Parker* and *Bowers & Bowers,* for appellee.

HOLDEN, J., delivered the opinion of the court.

This appeal comes from the chancery court of Harrison county on direct appeal of the appellant, Mrs. Annette Currie, and cross-appeal by J. F. Bennett, administrator of the estate of B. D. Currie, deceased. From a careful examination of the record in this case we find that there is only one question which deserves our consideration and discussion, and that is whether or not the chancellor erred in requiring the appellant, Mrs. Annette Currie, to pay over to J. F. Bennett, administrator of the estate of her deceased husband, the sum of one thousand one hundred dollers, and this controversy arises out of the following facts:

When B. D. Currie, the deceased husband of appellant, died, he left forty shares of stock in the Wiggins Turpentine Company, a corporation engaged in the turpentine business, domiciled at Wiggins, Harrison county, Miss. In the administration of the estate of said B. D. Currie in the chancery court, the court ordered these forty shares of stock to be sold at public auction after due notice, etc. The stock was sold in the manner prescribed by the decree of the court, and was purchased by one W. R. Barber, who paid the sum of three thousand dollars for it. This sale was subsequently reported and confirmed by the chancery court; but afterwards the sale was set aside and the administrator, Bennett, authorized to resell this stock at private sale. Following this order of the court below, the administrator sold the stock at private sale to the said W. R. Barber for three thousand dollars, and this sale was subsequently reported to, and approved and confirmed by, the chancery court. At a subsequent hearing by the court, a petition and motion was heard asking the chancellor to set aside

the said sale of this stock, and to require the appellant,
Mrs. Annette Currie, to pay over to the administrator,
Bennett, for the estate of her deceased husband, the
sum of one thousand one hundred dollars which she had
received from the Union Naval Stores Company, a cor-
poration domiciled at New Orleans, who was the owner
of the other stock in the said Wiggins Turpentine Com-
pany; and the chancellor, on this hearing, decreed and
ordered that the appellant, Mrs. Currie, should be
charged by the estate with the said sum of one thousand
one hundred dollars and interest thereon, which the court
stated in its decree was a part of the value of the stock
sold to the said Barber, who, it seems, as a matter of
fact, purchased the stock for the Union Naval Stores
Company. It appears from the record that the one
thousand one hundred dollars in question was paid to the
appellant, Mrs. Annette Currie, by the Union Naval
Stores Company under the circumstances as set out by
a letter in this record, which is as follows:

"New Orleans, June 6, 1912.

"Mrs. B. D. Currie, Bond, Mississippi—Dear Madam:
Ever since the death of Mr. B. D. Currie, we have been
striving to clear up the various and sundry entangle-
ments into which the business of the Wiggins Turpentine
Company fell, and have been trying hard to get it out
of debt. You know all the entanglement that the stock
held by your husband has gotten into, and you probably
understand the difficulty we have had in trying to clear
up the business. Through it all, Mr. W. L. Currie has
many times presented to us in your behalf the possibility
of our being able to do something for you, so that you
might get something out of the business. This was in
line with our own wishes, and we have a number of times
stated to creditors that, if we were let alone, we would
help the business and do the best we could by it. But
it has been a difficult undertaking, and continues to be.
Mr. Currie has again presented the matter to us, and
asked us if we could not see our way to doing something

for you now, and, after careful consideration of the subject, we have decided to say the following to you: As you doubtless know, there is absolutely no legal responsibility devolving upon us that would require us to pay you anything at all on account of this business. It is deeply in debt, and always has been, and there are several hundred dollars due it from your own good self, and several hundred from the estate of your husband, which last we don't suppose we will ever be able to collect. We recognize no liability, therefore, on account of this business, or your husband's interest in it, or that of your good self, or of your children; but, out of regard for your husband, who we believe did all he could for us when he had charge of the business, and out of a desire to have the people working for us feel that we will always do whatever we can for their families, if anything happens to them, we now suggest to you that we will give you in cash seven hundred dollars ($700), and a receipt in full for the amount that you owe the Wiggins Turpentine Company, which is something over four hundred dollars. The stock held by your husband was sold recently for three thousand dollars. If, for instance, we had bought this stock, and added it to this one thousand one hundred dollars which we are now proposing to turn over to you, it would make that stock cost us something over four thousand one hundred dollars, which would be making the stock worth more than par, while, as a matter of fact, it is worth very much less. If this suits you, let us know, and we will put it through. You have had a good friend in Mr. W. L. Currie, and we believe that we ourselves have some little claim on your consideration.

> "Very truly yours,
> "Union Naval Stores Company,
"WJL'E/FB                 W. J. L'Engle, President.""

The evidence in the record clearly discloses that the sale of the stock and the purchase by Barber for the

Union Naval Stores Company at three thousand dollars was regularly and properly carried out as directed by the chancery court, and completely closed, reported to, and confirmed by the chancellor. We see no reason why the chancellor should have found fault with this completed and confirmed sale of the stock. There is no fraud, collusion, or corruption alleged or shown to have been perpetrated, to the injury or damage of the estate of B. D. Currie, deceased; but it conclusively appears that the one thousand one hundred dollars paid by the Union Naval Stores Company to the widow, Mrs. Annette Currie, was in fact a gift, or a voluntary contribution to her, and was no part of the value of the stock sold, as it appears that the stock was worth even less than three thousand dollars. There being no evidence of collusion or fraud, and it appearing that the one thousand one hundred dollars given to Mrs. Currie by the Union Naval Stores Company was a gift, entirely independent of the sale of the Wiggins Turpentine Company stock, and could not be a part of the value thereof, nor connected with the transaction of the sale in any way, it was error for the chancellor to order that Mrs. Currie, the appellant, should be charged with the said one thousand one hundred dollars in favor of the administrator, Bennett, for the estate of the deceased, B. D. Currie.

Therefore the decree of the chancery court on direct appeal of Mrs. Annette Currie as to the said item of one thousand one hundred dollars is reversed, and decree here for her for said item, and the decree of the chancellor, on the cross-appeal as to the other items, is affirmed.

*Reversed.*
*Affirmed.*